**STATE of Iowa, Appellee,**

v.

**Michael Allen NAUJOKS, Appellant.**

No. 00–1149.

Supreme Court of Iowa.

Nov. 15, 2001.

Rehearing Denied Jan. 8, 2002.

Mark C. Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, and Denver D. Dillard, County Attorney, for appellee.

STREIT, Justice.

Michael Naujoks challenges the denial of his motion to suppress evidence of a large-scale theft operation gathered as a result of a warrantless search of the apartment where he was staying as an overnight guest. He also argues the search warrant later issued was defective because it violated Iowa Code section 808.3 (1999). Finally, he challenges the trial court's nunc pro tunc order amending his conviction to burglary in the second-degree as a violation of the Double Jeopardy Clause of the Fifth Amendment. Because we find the officers were not justified in securing the apartment, we reverse in part the trial court's denial of the motion to suppress. We also reverse the nunc pro tunc order and remand for a new trial.

## I. Background Facts & Proceedings

On November 21, 1999, at 9:00 a.m. Matthew Grennan awoke to find two strangers in his apartment. The men put clothes in Grennan's gym bag and took money from his wallet. Grennan watched them go into the apartment building across the street carrying these items. The men left their apartment building several more times and entered neighboring apartments. They returned carrying several items, including stereo equipment, a television, and compact discs. On their last trip out, a third man joined the two men. Grennan called the police and described the thieves and loot.

The responding officers went into the apartment building across the street from Grennan's. Upon hearing voices coming from apartment number one, the officers knocked on the door and spoke with two men in the apartment. The men lied twice about who was present. From their position standing in the open door of the apartment, the officers could see an unplugged television and stereo positioned on barstools. The officers saw a third man in the apartment and heard movement and other noises coming from inside. They secured the three known occupants, and put them in an empty room across the hall. The officers searched the apartment for other people present which led them to three others, including Naujoks, hiding in a locked bedroom.[1] Grennan identified Naujoks as one of the men who stole his clothes and money. On application for a search warrant, an associate judge issued a warrant based on the officers' personal observations and the on-scene identification.

---

1. The record is unclear as to how many people the officers discovered behind the locked door. The district court determined three people were behind the door, but Officer Kinkead's testimony suggests there were four people behind the door. In either case, the total number of people in the apartment was six.

The State charged Naujoks with two counts of second-degree burglary in violation of Iowa Code sections 713.1 and 713.5. The court denied Naujoks' motion to suppress the evidence concluding the officers had legitimate safety concerns to justify securing the apartment. The case was tried to the court and Naujoks was found guilty of two counts of third-degree burglary. The State filed a motion for order nunc pro tunc and the court granted it, amending the judgment to guilty on two counts of second-degree burglary. The court sentenced Naujoks to two concurrent indeterminate ten-year terms of imprisonment.

Naujoks appeals the judgment and sentences. He asserts the following: (1) the court erred in failing to suppress evidence derived from a warrantless search of the apartment where he was staying as an overnight guest; (2) the warrant application failed to comply with Iowa Code section 808.3, as it was not supported by an appropriate affirmation; and (3) the court violated his right to be free from double jeopardy when it changed the verdict.

## II. Standard of Review

■■■ Naujoks raises two issues involving an alleged violation of a constitutional right. He first challenges the police officers' warrantless entry into the apartment where he was staying as an overnight guest. Second, he challenges the validity of the search warrant. In assessing an alleged violation of a constitutional right, we review de novo the totality of the circumstances as shown by the entire record. *State v. Cline,* 617 N.W.2d 277, 280 (Iowa 2000). We are not bound by the district court's determinations, but we may give deference to its credibility findings. *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001). In reviewing the trial court's ruling, we consider both the evidence pre-

sented at the suppression hearing and that introduced at trial. *Id.* An adverse ruling on a motion to suppress will preserve error for our review. *State v. Breuer,* 577 N.W.2d 41, 44 (Iowa 1998).

## III. Warrantless Search and Seizure

■ The Fourth Amendment of the United States Constitution secures the right of people to be free from unreasonable search and seizure. This court has adopted a two-step approach to determine whether there has been a Fourth Amendment violation. *Breuer,* 577 N.W.2d at 45. The first step requires us to determine whether the person challenging the warrantless search has a legitimate expectation of privacy in the premises searched. *Id.* If we find the person has a legitimate expectation of privacy, we proceed to the second step which requires us to determine whether the State has "unreasonably invaded that protected interest." *Id.*

### A. Legitimate Expectation of Privacy

■■ The right afforded by the Fourth Amendment is specific to the individual and may not be invoked by third persons. *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373, 379 (1998). An individual challenging a warrantless search must demonstrate he possessed a legitimate expectation of privacy in the particular area searched. *United States v. McCaster,* 193 F.3d 930, 933 (8th Cir.1999). Specifically, he must show both a subjective and objective expectation of privacy. *Id.*

■■ We determine whether a person has a legitimate expectation of privacy on a case-by-case basis. *Breuer,* 577 N.W.2d at 46. One relevant factor to consider is the location of the person seeking its safeguards. *Carter,* 525 U.S. at 88, 119 S.Ct. at 473, 142 L.Ed.2d at 379. A person's

home is covered by the protections of the Fourth Amendment. *See Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908, 919 (1966). The courts have further held a legitimate expectation of privacy extends beyond a person's home, to afford protection to even an overnight guest in their host's home. *Minnesota v. Olson,* 495 U.S. 91, 99–100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85, 95 (1990). A guest does not have a legitimate expectation of privacy if he is on the premises merely to conduct a business transaction. *Carter,* 525 U.S. at 91, 119 S.Ct. at 474, 142 L.Ed.2d at 381.

■ Naujoks asserted he was an overnight guest in the apartment searched in both his motion to suppress and appellate brief. During these proceedings, the State has not challenged Naujoks' status as an overnight guest, and has conceded his status. Though slight, the record indicates Naujoks was an overnight guest. As such, we conclude Naujoks had a legitimate expectation of privacy in the apartment. We now turn to the issue of the reasonableness of the police officers' actions in entering the apartment without a warrant.

**B. Reasonableness of Warrantless Entry**

■ The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures. *State v. Canas,* 597 N.W.2d 488, 492 (Iowa 1999). The essential purpose of the Fourth Amendment "is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents in order 'to safeguard the privacy and security of individuals against arbitrary invasion....' " *State v. Loyd,* 530 N.W.2d 708, 711 (Iowa 1995) (quoting *Delaware v.*

*Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979)).

■ In examining the lawfulness of the officers' actions, we must balance the parties' respective interests. *Illinois v. McArthur,* 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838, 848 (2001); *State v. Keehner,* 425 N.W.2d 41, 44 (Iowa 1988) (citing *Prouse,* 440 U.S. at 653–54, 99 S.Ct. at 1396, 59 L.Ed.2d at 674). On the one hand, we consider Naujoks' Fourth Amendment interests. On the other hand, we must also consider the promotion of legitimate governmental interests, including "realistic standards of law enforcement." *State v. Wiese,* 525 N.W.2d 412, 415 (Iowa 1994), overruled on other grounds by *Cline,* 617 N.W.2d at 281 (quoting *People v. Parisi,* 393 Mich. 31, 35, 222 N.W.2d 757, 759 (1974)); *Keehner,* 425 N.W.2d at 44. This balancing test requires us to determine:

> [w]hether the thing done [by government officials], in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected.

*State v. Legg,* 633 N.W.2d 763, 765 (Iowa 2001) (quoting *State v. Hilleshiem,* 291 N.W.2d 314, 316 (Iowa 1980)).

■ Searches and seizures are unconstitutional if they are unreasonable and reasonableness depends on the facts of the particular case. *State v. Roth,* 305 N.W.2d 501, 504 (Iowa 1981). Warrantless searches are per se unreasonable if they do not fall within one of the well-recognized exceptions to the warrant requirement. *Canas,* 597 N.W.2d at 492. Those exceptions include: (1) consent search; (2) search based on probable cause and exigent circumstances; (3) search of items in plain view; or (4) search incident to a lawful arrest. *Cline,* 617 N.W.2d at 282. The State must prove by a preponderance

of the evidence that a warrantless search falls within one of the exceptions. *State v. Gillespie,* 619 N.W.2d 345, 350 (Iowa 2000).

Under the circumstances of this case, the reasonableness of the officers' actions is determined by the presence or absence of probable cause and exigent circumstances. *Legg,* 633 N.W.2d at 770; *State v. Brecunier,* 564 N.W.2d 365, 367 (Iowa 1997). Probable cause is based on the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 544 (1983). If we find a basis for probable cause, we will then determine whether exigent circumstances existed to justify the warrantless entry.

### 1. Probable Cause

The standard for probable cause is whether a person of reasonable prudence would believe a crime has been committed or that evidence of a crime might be located in the particular area to be searched. *State v. Poulin,* 620 N.W.2d 287, 290 (Iowa 2000). Several facts are relevant to determine the merits of the probable cause issue. The man who answered the door lied to the officers. He said he was alone, but when questioned about other voices in the apartment, admitted that his roommate was present. Then, the roommate lied to the officers. The roommate said no one else was present in the apartment. However, another man quickly appeared bringing the total count of occupants to three. The third man would not cooperate or identify himself to the officers. Instead, he left the officers' field of view and joined the roommate who had earlier retreated to the back of the apartment. As the officers spoke with the men, they noticed an unplugged television and stereo positioned on bar stools inside the apartment. As all this transpired, the officers heard movement and other noises inside the apartment.

We find ample evidence in the record to support a finding of probable cause to believe a crime had been committed and evidence of it was located in the apartment. The occupants' lies about who was present in the apartment suggested they were trying to conceal the presence of other people. The officers had further support for probable cause when they saw the television and stereo equipment in the apartment. All of the items were unplugged and positioned on bar stools. The items seemed out of place. Furthermore, the items matched the description of those items Grennan saw the suspects carry out of one apartment building and back to their apartment. After the officers spoke with the occupants of apartment number one, it became clear there was a connection between the occupants of the apartment and the recent burglaries. We conclude there was probable cause that evidence of a crime was in the apartment.

### 2. Exigent Circumstances

We now turn to the issue of exigency, as probable cause alone is not sufficient to justify the officers' warrantless search of the apartment. In determining whether exigent circumstances exist, we look to several factors. *Brecunier,* 564 N.W.2d at 367 (citing the test articulated in *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C.Cir.1970)). For the purposes of a warrantless search and seizure, we have found exigent circumstances exist in the following situations: danger of violence and injury to the officers; risk of the subject's escape; or the probability that, unless immediately seized, evidence will be concealed or destroyed. *State v. Hatter,* 342 N.W.2d 851, 854 (Iowa 1983).

 The officers must have specific, articulable grounds to justify a finding of exigency. There is testimony from the officers they believed there was an officer safety concern. However, the legality of a warrantless search is not determined by the officers' subjective beliefs. *See Cline*, 617 N.W.2d at 281 (citing *State v. Predka*, 555 N.W.2d 202, 205 (Iowa 1996)). Rather, the reasonableness of the officers' search is determined on an objective standard. *See Cline*, 617 N.W.2d at 280–82 (citing *State v. Jones*, 586 N.W.2d 379, 382 (Iowa 1998)). The following considerations are pertinent to our determination of whether exigent circumstances existed to justify an invasion of Naujoks' reasonable expectation of privacy.

 First, there is no evidence in the record to suggest the officers were faced with elevated circumstances of burglary justifying the warrantless search and seizure. There is no evidence that guns or any other weapons were involved. Moreover, the officers both testified that they had no information suggesting the occupants of the apartment were otherwise dangerous. The occupants had not made any threatening remarks or gestures towards the police officers. This situation did not involve any objective indication of fear of violence or jeopardy more than any other police encounter with persons suspected of criminal activity would involve.

Second, there is no evidence of risk of escape. The suspects were confined to the apartment unit. There were two officers outside of the apartment building guarding the window to apartment number one. These two officers were also watching the other entrances of the apartment complex. During the officers' initial contact with the occupants of the apartment, the door was open such that the officers were able to see inside of the apartment. *See Latham v. Sullivan*, 295 N.W.2d 472, 478 (Iowa Ct.App.1980) (no risk of escape where posting officers outside door could have prevented any escape). At their position just outside of the apartment door, these officers would have been aware if anyone had left the apartment. At the time the officers first entered the apartment, a total of six officers were present at the scene. In addition to the police presence on the ground, a police helicopter was overhead monitoring the situation. Given the significant police presence at the scene, there could be no legitimate fear of escape.

 Third, this is not a situation where the police officers were in hot pursuit of suspects. Hot pursuit describes the situation when the police are pursuing a suspect who is in the process of fleeing from a recently committed crime. *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782, 787 (1967). We cannot, under the facts of this case, conclude the officers were in "hot pursuit" of the suspects allowing them to enter the protected area without a warrant.

We also reject the claim of exigent circumstances on the basis of potential destruction of evidence. The victim reported the suspects carried a television and stereo equipment back to their apartment. It would have been very difficult for the occupants of the apartment to destroy or disfigure these items in such way as to make identification of the serial numbers impossible. In addition to these larger items, a duffle bag, assorted clothing, compact discs, cash and a wallet containing an ATM debit card were stolen. This is not a case where drugs were involved which are easily destroyed by flushing them down the toilet or through ingestion. *See, e.g., State v. Strong*, 493 N.W.2d 834, 838 (Iowa 1992) (finding exigent circumstances where officers were confronted with a situation where delay to obtain warrant would cause destruction of evidence of narcotics

through the digestive process). Though the police were aware smaller items were missing, they were only able to see the large items in the apartment. Even if some of the items were susceptible to destruction, given it was approximately ten o'clock in the morning, it would not have taken long to obtain a warrant.

Consequently, we cannot conclude there was sufficient evidence of exigent circumstances to justify the warrantless search and seizure. The record is devoid of an articulable basis to support a legitimate officer safety concern. We find only a mere assertion by one of the officers there was fear for officer safety. Beyond this assertion, we cannot find any indicia of danger. The officers were not in "hot pursuit" of the suspects. *See Legg*, 633 N.W.2d at 772 (finding exigent circumstances where officers were in hot pursuit of an intoxicated defendant who retreated to her garage). There was no legitimate concern for the potential destruction of evidence. *See United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300, 305 (1976); *see also Legg*, 633 N.W.2d at 772. Finally, because the apartment was well guarded by police officers, there was no reason to fear the occupants' escape.

■■■ From a societal standpoint, officer safety is important to us. However, it is not enough to simply assert a concern for the life or safety of an officer. Some reasonable indication of security concerns, other than unarticulated suspicions, is necessary before we can find exigent circumstances to justify a violation of a person's Fourth Amendment rights. When we balance the legitimate government interests against Naujoks' privacy-related rights, we find the officers' conduct was not fair and reasonable. *See State v. Johnson*, 395 N.W.2d 661, 664 (Iowa Ct.App.1986). We reverse the district court's denial of Nau-

joks' motion to suppress and remand for a new trial.

## IV. Legality of the Search Warrant

It is necessary to address two issues regarding the legality of the issued search warrant. Given our finding the police officers illegally entered the apartment, we must determine if there is sufficient probable cause for the issued search warrant to stand. But first, we will address the issue regarding whether the application for the search warrant failed to comply with Iowa Code section 808.3.

### A. Application for the Search Warrant

■■■ Naujoks attempts to invalidate the issued search warrant arguing it does not comply with the requirements of Iowa Code section 808.3. The relevant portion of this section provides, in part:

> [a] person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person's oath or affirmation which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist.

The application for the search warrant was prepared and signed by officer Been of the Cedar Rapids Police Department. An associate district court judge witnessed his signature. Naujoks contends there is a defect in the application with respect to the phrase, "WHEREFORE, the undersigned asks that a search warrant be issued." The names of county attorney, Denver Dillard and assistant county attorney, Harold Denton, are printed after this phrase. Naujoks asserts it was assistant county attorney Denton who applied for the search warrant, rather than officer Been who prepared and signed the appli-

cation and served as affiant. There is nothing in the record to indicate that assistant county attorney Denton was the affiant or applicant. Instead, the record reflects he reviewed the search warrant and approved it. The procedure used complies with Iowa Code section 808.3. We affirm.

## B. Admissibility of Evidence

■■■ We concluded above the officers had sufficient evidence to constitute probable cause to apply for a search warrant. However, since the police officers were not justified in entering the apartment without a search warrant, any evidence or information obtained after the illegal entry is tainted evidence. Consequently such evidence may not form the basis of probable cause to issue a search warrant. "An unlawful search taints all evidence obtained in the search or through leads uncovered by that search and bars its subsequent use." *State v. Ahart*, 324 N.W.2d 317, 318 (Iowa 1982) (citing *State v. Swartz*, 244 N.W.2d 553, 555 (Iowa 1976)); accord *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453–54 (1963). Thus, the tainted evidence is not admissible under the exclusionary rule. We must determine whether there is legally obtained evidence to constitute probable cause for the issued search warrant.

■■■ Before we turn to the merits of this issue, we will briefly examine the background and purpose of the exclusionary rule. Eighty-seven years ago the United States Supreme Court enunciated the exclusionary rule to discourage disregard for constitutional guarantees. The rule requires suppression at trial of evidence discovered as a result of illegal government activity. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). The concept was expanded to include other indirect evidence that was said to be "tainted" by the original illegality. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920). Justice Frankfurter coined the phrase, "fruit of the poisonous tree," to illustrate the concept of tainted evidence. *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939). The purpose of excluding such evidence is twofold: to deter lawless police conduct and to protect the integrity of the judiciary. *State v. Hamilton*, 335 N.W.2d 154, 158 (Iowa 1983) (citing *Brown v. Illinois*, 422 U.S. 590, 599–600, 95 S.Ct. 2254, 2259–60, 45 L.Ed.2d 416, 424–25 (1975)).

■■■ There are three exceptions to the exclusionary rule. One exception permits use of certain evidence when circumstances independent of the initial illegality have so attenuated the causal connection as to purge the taint of the unlawful police action. *Hamilton*, 335 N.W.2d at 158. Another exception to the exclusionary rule admits evidence, even though it was unlawfully obtained, if the government can show the discovery of the evidence by lawful means was inevitable. *Id.; see, e.g., Brewer v. Williams*, 430 U.S. 387, 406 n. 12, 97 S.Ct. 1232, 1243 n. 12, 51 L.Ed.2d 424, 441 n. 12 (1977). Evidence may also be admitted if the discovery of the evidence can be traced to a source independent of the originally illegally obtained fruits. *Id.; see, e.g., Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 418, 9 L.Ed.2d at 455.

■■■ These exceptions to the exclusionary rule are based on the belief:

[t]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position [than] they would have been in if no police error or misconduct had occurred.

*State v. Seager,* 571 N.W.2d 204, 211 (Iowa 1997) (quoting *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387–88 (1984)). If one of the three exceptions to the exclusionary rules applies, the challenged evidence is admissible because to exclude such evidence would "put the police in a worse position than they would have been in absent any error or violation." *Id.*

Now, turning to the particular facts of this case, we must determine whether the information offered in the application for the search warrant was legally obtained by the police officers. We first look to the facts cited in the application for the search warrant. Then we must establish how the officers obtained those facts.

We find, upon reviewing the application, the associate judge based her decision to issue a search warrant on the following information. The police officers spoke with the victim, Grennan, who described the physical appearance of the thieves. One of the occupants seen in the apartment matched the description of a suspect given by Grennan. Grennan also described the stolen items and the items he saw the suspects carry out of other apartments and into apartment number one. These items included a television, stereo equipment, and assorted clothing. The officers went to apartment number one and spoke with the man who answered the door. As the officers stood just outside the doorway to the apartment, they could see a television and stereo equipment positioned on bar stools. The items were unplugged and looked out of place. Moreover, the items matched Grennan's description of certain stolen items. When the officers asked the occupants who owned the electronic equipment, one of the men responded he had no idea where the items came from. The occupants also lied numerous times about who was present in the apartment. They did not cooperate with the officers and refused to identify themselves. Two of the occupants retreated to the back of the apartment. The officers contacted other victims who reported additional stolen items. The application included several attachments listing all of the stolen items from the various victims.

These above facts were all obtained through the officers' observations prior to the illegal entry. The following facts were also included in the application for a search warrant, but they were obtained after the officers' illegal entry. The officers entered apartment number one and identified six people. They were detained in a vacant room of the apartment building. The officers brought Grennan to this room where he identified two men, including Naujoks, as the thieves who were earlier in his apartment. The two men were subsequently arrested for burglary.

The issue is whether the illegal entry tainted all of the information in the application for the search warrant. The application included evidence of stolen property in the apartment. This information was not discovered as a result of the illegal entry. Rather, the suspicious items were in plain view even before the officers illegally crossed the threshold of the apartment. The officers personally observed one of the occupants matched Grennan's description of the thieves. Before the officers secured the apartment, they noted the occupants' lies and other suspicious behavior. Other than Grennan's identification of the defendants, the rest of the evidence was legally discovered through the officers' personal observations prior to the warrantless entry. All of the evidence, other than the on-scene identification, was therefore properly considered by the associate judge in her decision to issue a search warrant

because the police officers legally obtained the evidence.

 "When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." *James v. United States*, 418 F.2d 1150, 1151 (D.C.Cir.1969). "If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted." *Id.* at 1152.

It is amply demonstrated that Grennan's identification of the suspects on the day of the crime was erroneously considered because it was derived as a result of the warrantless entry. However, under these facts, absence of the tainted evidence does not create a "grave doubt" the warrant would not have been issued without it. *See United States v. Nelson*, 459 F.2d 884, 895 (6th Cir.1972). In reaching this conclusion, we do not dismiss the significance of Grennan's on-scene identification of the defendants. Rather, given the facts before us, we conclude the remaining untainted evidence substantial enough to constitute probable cause to issue the search warrant. The State may retry Naujoks without the use of the tainted evidence.

## V. Double Jeopardy

The State charged Naujoks with two counts of second-degree burglary. There was evidence supporting the charges of second-degree burglary. However, the trial court found Naujoks guilty of two counts of third-degree burglary. The State filed a motion for order nunc pro tunc to clarify the degree of the convictions, and the court granted the motion. The court issued an order nunc pro tunc

finding Naujoks guilty of two counts of second-degree burglary.

 One purpose of a nunc pro tunc order is to correct clerical errors. Iowa R.Crim. P. 22(3)(g); *State v. Suchanek*, 326 N.W.2d 263, 265–66 (Iowa 1982). A clerical error is one that is not the result of judicial reasoning and determination. Smith v. *State* , 801 S.W.2d 629, 632 (Tex. Ct.App.1991). An order nunc pro tunc cannot be used to remedy an error in judicial thinking, a judicial conclusion, or a mistake of law. *Headley v. Headley,* 172 N.W.2d 104, 108 (Iowa 1969).

 The State now agrees the order nunc pro tunc violated Naujoks' right to be free from double jeopardy. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This clause protects against successive prosecutions after acquittal or conviction. In the present case, Naujoks was found guilty of two counts of third-degree burglary. Having been found guilty of third-degree burglary, Naujoks could not be found guilty of a higher offense based on these same events. *See, e.g., State v. Taft,* 506 N.W.2d 757, 761 (Iowa 1993). The court was not correcting a clerical error. Rather, in its order nunc pro tunc, the court stated it "incorrectly recited that the defendant is guilty of burglary in the third degree in each count. This was an error by the court." As such, the order nunc pro tunc violated the principle of double jeopardy. Consequently, Naujoks may not be retried on the charge of burglary in the second degree. He may, however, be properly retried on the charge of burglary in the third degree. We reverse the trial court's nunc pro tunc order and remand for a new trial on two counts of third-degree burglary.

REVERSED IN PART AND RE-MANDED FOR A NEW TRIAL.