¶ 139.
REBECCA GRASSL BRADLEY, J.
(dissenting). I agree with the lead opinion's holding that hot pursuit for a jailable offense can itself present exigent circumstances justifying warrantless entry into a citizen's home. This court has already said so. See State v. Ferguson, 2009 WI 50, ¶¶ 19-20, 26-30, 317 Wis. 2d 586, 767 N.W.2d 187; State v. Sanders, 2008 WI 85, ¶¶ 117-118, 311 Wis. 2d 257, 133-134 752 N.W.2d 713 (Prosser, J., concurring). I cannot join the lead opinion, however, because the facts in this record (1) do not show hot pursuit and (2) fail to establish that probable cause to arrest for a jailable offense existed before the deputy entered Weber's garage. The lead opinion— without precedent—extends the exigency of hot pursuit to the situation here where the jailable offense is the alleged "flight" itself. This circular expansion of hot pursuit doctrine violates the Fourth Amendment, which the Founding Fathers enshrined in our Constitution to protect the people from unwarranted government intrusion. Accordingly, I respectfully dissent.
¶ 140. The objective facts here do not support probable cause for a jailable offense and do not establish any exigent circumstance. Instead, the facts show a deputy concerned about a broken brake light who nevertheless had no urgent or immediate need to breach the threshold of Weber's home without first securing a warrant. Merely because the officer's actions in this case may not strike us as particularly *268 offensive does not mean this court should lower its guard over constitutional rights:
[I] Ilegitímate and unconstitutional practices get their first footing ... by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.
Boyd v. United States, 116 U.S. 616, 635 (1886).
¶ 141. Precisely because the absence of alarming facts in this case may render the court's encroachment on the Fourth Amendment a stealthy one, I write to caution against this latest contribution to the gradual depreciation of the right of a person to retreat into the home, free from unreasonable physical entry. The Fourth Amendment does not permit governmental intrusion into a person's home premised on a de minimis traffic law violation like a broken brake light. Entering the home without a warrant and absent any exigency is the "chief evil" against which the Fourth Amendment protects the people. See Welsh v. Wisconsin, 466 U.S. 740, 748 (1984).
¶ 142. Setting aside Fourth Amendment concerns, the deputy's actions do not seem egregious; if the deputy had done the same thing in a public place, his actions undoubtedly would not violate the Fourth Amendment. But seizing Weber inside Weber's protected curtilage absent any exigency triggers the Fourth Amendment's protection and makes the depu *269 ty's warrantless entry constitutionally unreasonable.[1] Although the deputy's actions may seem less intrusive because he entered Weber's open garage rather than Weber's home, entering the garage is the constitutional equivalent of entering the home. The lead opinion's reasoning ignores this principle and opens the door for a future court to endorse an officer's warrant-less entry into a home for a mere traffic violation.
I
¶ 143. The lead opinion concludes that this case involved hot pursuit. I disagree. Hot pursuit means "some sort of a chase." Sanders, 311 Wis. 2d 257, ¶ 109 (Prosser, J. concurring) (quoting United States v. Santana, 427 U.S. 38, 43 (1976)). "Hot pursuit describes the situation when the police are pursuing a suspect who is in the process of fleeing from a recently committed crime." State v. Naujoks, 637 N.W.2d 101, 109 (Iowa 2001) (citing Warden v. Hayden, 387 U.S. 294, 298-99 (1967)). It is the "immediate or continuous pursuit of the [suspect] from the scene of the crime." Welsh, 466 U.S. at 753. Although hot pursuit is not defined in terms of a particular length of time, it does involve some sort of chase and requires the recent commission of a jailable crime. The chase commences from the scene of the crime, triggering the hot pursuit.
f 144. Calling what happened here "hot pursuit" stretches that term too far. "[A]pplication of the *270 exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed." Welsh, 466 U.S. at 753 (involving first-offense drunk driving). The facts here show there was no chase. The deputy followed Weber 100 feet while Weber slowed his car down to turn into his driveway. There was no recently committed jailable crime prompting the pursuit, nor was there a crime scene from which Weber fled. Weber was driving with a broken brake light. That is not a jailable crime.
¶ 145. It may be tempting to validate the deputy's actions here in order to discourage traffic violators and serious criminals from ignoring the police and racing home to avoid traffic stops or police investigation. Fourth Amendment protections, however, cannot be jettisoned based on fear that some citizens may attempt to run home and hide. The 100 feet Weber travelled did not create an exigency because the deputy was not "chasing" Weber for a jailable crime recently committed.[2] There are, however, factual scenarios where a pursuit of 100 feet or an even shorter distance will justify warrantless entry. See, e.g., Santana, 427 U.S. at 43.
¶ 146. We need not identify a precise distance that is acceptable or unacceptable because the Fourth Amendment draws the line at probable cause, exi *271 gency, and reasonableness. Police may enter a person's home without a warrant only if there is probable cause to believe a jailable crime has been committed, a suspect's flight creates an exigency such that there is no time to get a warrant, and the search or seizure is reasonable.
II
¶ 147. The lead opinion essentially concludes the jailable offense at issue here was Weber's "flight." The Fourth Amendment, however, does not support war-rantless entry into a home when the jailable offense justifying entry is the flight itself. To condone warrant-less entry into the home, Fourth Amendment jurisprudence requires probable cause that a jailable offense occurred before the flight began. If the flight itself creates the jailable offense that serves as an exigency and overcomes Fourth Amendment protections, a police officer can in essence create a jailable offense out of any attempted traffic stop or any attempt to speak with a citizen—even though no other jailable offense has occurred. At the point the deputy entered Weber's garage, all he knew was that Weber had a defective high-mounted brake lamp, pulled into his garage, walked to the door of his house inside the garage, and did not respond to the deputy's request to talk.
¶ 148. At the time the deputy seized Weber, the deputy's sole concern was the defective high-mounted brake lamp. When asked why he tried to stop Weber, the deputy answered, "I attempted to stop him for defective high mounted brake lamp," and he added that he notified dispatch he "had a traffic stop." Clearly, to the deputy this stop was not about pursuing Weber for a jailable offense. It was about a broken brake light and the need to tell Weber about it.
*272 ¶ 149. The lead opinion points out that the officer's subjective motivation does not govern our review; instead, we review the objective facts. See lead op., ¶ 19 n.6. But the objective facts are clear: There was no recently committed jailable offense that sparked a hot pursuit into Weber's home. There was an attempted traffic stop for a broken brake light. The motorist showed no indication of knowing the deputy activated his squad car's emergency lights. The motorist slowed down, drove 100 feet, turned into his driveway, pulled into his garage, and walked to the door of the house. Because the law does not support warrant-less entry under these circumstances, I respectfully dissent.

 There is no dispute that Weber's attached garage is the equivalent of his home and therefore receives the same Fourth Amendment protections. See Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (explaining that the curtilage "enjoys [the same] protection as part of the home itself'); see also State v. Dumstrey, 2016 WI 3, ¶ 35, 366 Wis. 2d 64, 873 N.W.2d 502 (noting that a single family home's attached garage is curtilage).

 Although the information discovered after the deputy breached the garage threshold revealed that Weber had been drinking and driving, our Constitutional decisions must not be influenced by evidence obtained after an unlawful entry. See, e.g., Missouri v. McNeely, 133 S. Ct. 1552 (2013) (excluding warrantless blood test showing driver had illegal BAC because search was unlawful under Fourth Amendment).