# IN THE COURT OF APPEALS OF IOWA

No. 18-0747
Filed May 1, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DESTINY BROWN,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Black Hawk County, Brook Jacobsen, District Associate Judge.


Destiny Brown appeals the district court's denial of her motion to suppress evidence. **AFFIRMED.**


Mark C. Smith, State Appellate Defender (until withdrawal), and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Richard J. Bennett, Special Counsel, for appellee.


Heard by Mullins, P.J., Vogel, C.J., and Vaitheswaran, Doyle, and Tabor, JJ.

**MULLINS, Presiding Judge.**

Destiny Brown appeals her convictions of two counts of second-offense possession of a controlled substance, contending the district court erred in denying her motion to suppress evidence obtained as a result of a traffic stop. She contends the State failed to meet its burden to prove the continued detention following the initial stop of her vehicle was constitutional. She additionally argues the stopping officer's failure "to diligently and reasonably investigate the reasonable suspicion for the traffic stop" rendered the continued detention unconstitutional.

**I.      Background Facts and Proceedings**

Shortly before 3:00 a.m. on January 4, 2018, Officer Nicholas Weber of the Waterloo Police Department noticed a black Volkswagen SUV with no rear license plate. Instead of a license plate, the vehicle was donning a "paper dealer plate" on its bumper. Weber also did not observe a temporary registration tag affixed to the vehicle. Weber testified to his understanding of temporary registration tags as follows:

> It is my understanding that it is supposed to be placed in lieu of a plate until a plate is issued, placed somewhere where it is visible similar to a license plate so that all numbers, digits, letters can be read clearly and from a reasonable distance.

Weber initiated a traffic stop of the vehicle, which was driven by Brown. Weber testified the body and windows of the vehicle were dirty. A review of the dash- and body-camera footage admitted as evidence at the suppression hearing supports this characterization. The footage also confirms Weber's testimony that the rear window had dark tint and the district court's description of exhaust

"billowing up from the rear driver's side" of the vehicle. At the time he stopped the vehicle, Weber did not observe any temporary registration tags on the vehicle. Weber immediately approached the vehicle. Weber testified to his habit of cautiously approaching a vehicle during a traffic stop and observing the driver for furtive movements. After making contact and a brief exchange, Weber requested Brown's "license, purchase paperwork, and insurance." Weber testified he asked for purchase paperwork instead of a vehicle registration because the vehicle did not have a valid license plate, as he would typically do in such a situation. Brown immediately responded, "I'm going to be honest—I don't have a license." Weber questioned Brown about the status of her driver's license, and Brown advised she has never had a license. Weber then requested identification from Brown and again asked for purchase paperwork and proof of insurance for the vehicle. Brown was able to locate and tender a valid registration for the vehicle but could not locate a license plate to correspond with that registration.

Weber returned to his vehicle, ran Brown's information through dispatch, and learned Brown's driver's license was suspended. Brown subsequently admitted to the presence of drug paraphernalia in the vehicle. A search of the vehicle was ultimately conducted, which uncovered the paraphernalia, a stun gun, and controlled substances. Officers also learned Brown was the subject of an active arrest warrant. Brown was taken into custody.

Despite Weber not observing a temporary registration tag on the vehicle when he initiated the traffic stop, one was affixed inside the vehicle on the driver side of the rear window. Weber generally testified he does not recall at what point during the course of the foregoing events he observed the tag. However, he

confirmed he did not identify it "immediately on approach." Our review of the video footage in its entirety shows that the view of the temporary registration tag was somewhat obstructed by window tint, dirt, the vehicle's exhaust, and reflective glare, but its presence—but not necessarily the information contained thereon—could be discerned from an inspection.

Brown was charged by trial information with carrying weapons and three counts of second-offense possession of a controlled substance.[1] She subsequently filed a motion to suppress, arguing the search of her vehicle was in violation of article I, section 8 of the Iowa Constitution and the Fourth Amendment to the United States Constitution. At the suppression hearing, defense counsel clarified she was not challenging the legality of the initial stop or the subsequent search of the vehicle but instead was challenging the legality of the continued detention. The district court denied the motion to suppress. The matter proceeded to a bench trial, and the court found Brown guilty of two counts of possession of a controlled substance, second offense. Brown appealed following the imposition of sentence.

## II.    Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire

---

[1] The State dismissed one of the possession charges prior to submission of the matter to the court.

record." *Id.* (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Coffman*, 914 N.W.2d at 244 (quoting *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012)). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

## III.    Analysis

Brown argues the State did not carry its burden to prove the officer did not see whether there was temporary registration tag in the rear window before he made contact with her, and the officer failed to diligently and reasonably investigate the existence of the temporary tag prior to making contact with her.

"The Fourth Amendment of the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Stopping an automobile and detaining its occupants unquestionably amounts to a seizure within the meaning of the state and federal constitutions. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017). As such, a traffic stop must be reasonable under the circumstances. *See Whren v. United States*, 517 U.S. 806, 810 (1996); *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). Evidence obtained in violation of these constitutional protections is generally inadmissible at trial. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

On appeal, Brown does not challenge the initial traffic stop or the subsequent search of her vehicle. Her argument relies on our supreme court's

ruling in *State v. Coleman*, "that when the reason for a traffic stop is resolved and there is no other basis for reasonable suspicion, . . . the driver must be allowed to go his or her way without further ado."[2]  890 N.W.2d at 301.  Because Weber stopped Brown for not having a license plate and the vehicle was in fact donning a temporary registration tag, Brown argues her constitutional rights were violated when Weber continued to detain her.  Brown contends, "If Officer Weber noticed the temporary plate prior to approaching [her] vehicle, then his request for her license, proof of purchase, and insurance unconstitutionally extended the traffic stop."  Brown further argues the State failed to meet its burden to show Weber did not observe the temporary registration tag prior to making contact with Brown, and the district court's finding to the contrary is erroneous.  Because of this alleged failure, Brown takes the position that Weber saw the temporary registration tag prior to making contact with her, the reasonable suspicion for the stop therefore dissipated at that time, she should have been allowed to go her way without further ado, and any further detention amounted to an unconstitutional seizure.  *See id.* at 285 ("[T]he stop must end when reasonable suspicion is no longer present.").  It would follow that any evidence obtained following the alleged violation must be

---

[2] In *Coleman*, an officer conducted a random license-plate check of a vehicle and discovered the registered owner, a female, had a suspended driver's license.  890 N.W.2d at 285.  Because it was dark, the officer could not determine whether the driver was a male or a female.  *Id.*  The officer stopped the vehicle and, as he approached, "it was clear to [him] that the driver was male, not female."  *Id.*  The officer did not terminate the stop, but proceeded to ask the driver for his license, registration, and proof of insurance.  *Id.*  At the time the officer made this request, he "no longer had reasonable suspicion that a traffic offense had been committed."  *Id.*  However, based on the driver's identification, the officer was able to determine the driver was driving while barred.  *Id.*  The supreme court concluded detaining the driver after the reason for the stop was resolved and there was no other basis for reasonable suspicion violated his rights under the Iowa Constitution.  *Id.* at 301.

suppressed as fruit of the unlawful action.  *See Wong Sun v. United States*, 371 U.S. 471, 484–84 (1963).

"[T]he State has the burden to 'demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'"  *State v. McCoy*, 692 N.W.2d 6, 18 (Iowa 2005) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Thus, the State has the burden to show that the stopping officer had reasonable suspicion or probable cause to justify the initial seizure and that any extension of the stop was accompanied by a continuing reasonable suspicion or probable cause.  *See Coleman*, 890 N.W.2d at 285; *State v. Tyler*, 830 N.W.2d 288, 297– 98 (Iowa 2013); *State v. Pals*, 805 N.W.2d 767, 774 (Iowa 2011).

Brown argues the State failed to meet its burden to show Weber did not observe the temporary tag and he therefore did not have a continuing valid basis to detain her for the purpose of requesting information.  Brown generally points to Weber's testimony at the suppression hearing that he could not recall at what point during the traffic stop he noticed a temporary tag was affixed to Brown's vehicle. However, Weber confirmed during his testimony that he did not identify the temporary registration tag "immediately on approach" to the vehicle.  Likely as a result of this testimony, when considered in conjunction with the remaining evidence and totality of the circumstances, the district court found "Weber made contact with the defendant *before* noticing the temporary paper plate affixed to the rear window."  Brown further argues that Weber was constitutionally required "to diligently and reasonably investigate the reasonable suspicion for the traffic stop,"

and his failure to do so resulted in an unreasonable and therefore illegal seizure of Brown. *See Coleman*, 890 N.W.2d at 301.

Upon our de novo review of the record, even if Weber had seen the tag before making contact with Brown, or had paused at the rear of the vehicle to investigate further, the evidence presented by the State at the suppression hearing shows that the information contained on the tag was not readily ascertainable under the circumstances of this traffic stop. Neither Weber's vehicle dash cam nor his body cam reveal any detail that is helpful to Brown's argument. Further, the footage from assisting Officer Lucas Scarbrough's body cam includes a detailed view of the rear window and shows the window was so dirty and darkly tinted that it would have been impossible for Weber to read the tag. Under these circumstances, even if Weber had seen the tag before making contact with Brown, the continued detention of Brown for the purpose of requesting information was reasonable and permissible. *See, e.g.*, *State v. Knight*, 853 N.W.2d 273, 277–78 (Iowa Ct. App. 2014) (finding reasonable officer making contact with driver, although officer observed temporary tag after initiating traffic stop but before making contact, because the tag could not be read under the circumstances); *State v. Corry*, No. 08-0858, 2009 WL 141201, at *2 (Iowa Ct. App. Jan. 22, 2009) (same); *cf.* Iowa Code § 321.38 (requiring registration plates to be "clearly visible" and "maintained free from foreign materials and in a condition to be clearly legible"). Of course, the continued detention would have also been permissible if he did not see the tag.[3]

---

[3] In *State v. Lloyd*, our supreme court considered a similar set of facts. *See generally* 701 N.W.2d 678 (Iowa 2005). In that case, a police officer stopped the defendant for traveling

Here, Weber diligently pursued a reasonable means of investigation likely to confirm or dispel his suspicion within a reasonable time. *See United States v. Sokolow*, 490 U.S. 1, 11 (1989) (noting the least-intrusive-means standard is directed at "the length of the investigative stop, not at whether the police had a less intrusive means to verify their suspicions" and the reasonableness of a seizure "does not turn on the availability of less intrusive investigatory techniques," as "[s]uch a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and it would require courts to 'indulge in "unrealistic second-guessing."'" (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985))); *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (noting reasonableness depends on "whether the police diligently pursued a means of

---

in a vehicle "without permanent license plates." *Id.* at 679. But, unbeknownst to the officer, "a valid temporary plate was taped to his car's rear window." *Id.* The defendant moved to suppress the evidence obtained as a result of the stop, and the State responded the stopping officer "simply missed the temporary plate at the time of the stop and that such a mistake does not bar a finding of probable cause." *Id.* The court framed the issue as "whether a police officer may rely on his mistake of fact to justify a traffic stop." *Id.* at 680. The court answered that question in the affirmative, but noted a requirement that the mistake of fact be "an objectively reasonable one." *Id.* at 680–82.

To the extent Brown implicitly argues *Lloyd* was overruled by *Coleman*, we disagree. *Lloyd* stands for the proposition that reasonable suspicion or probable cause do not evaporate when based on an officer's objectively reasonable mistake of fact; absent knowledge of the true state of facts, which if possessed by the officer would dissolve reasonable suspicion or probable cause, the officer still has a valid basis to investigate— probable cause or reasonable suspicion continue to exist. *See id. Coleman* only addressed a "narrow question," whether law enforcement may extend the traffic stop absent reasonable suspicion by requesting a driver's license, vehicle registration, and proof of insurance. 890 N.W.2d at 288. *Coleman* mandates a "stop must end when reasonable suspicion is no longer present." *Id.* at 285; *accord id.* at 301 ("[W]hen the reason for a traffic stop is resolved and there is no other basis for reasonable suspicion, . . . the driver must be allowed to go his or her way without further ado."). An objectively reasonable mistake of fact continues to be a valid basis for a seizure.

In any event, we find it unnecessary to determine whether there was a mistake of fact in this case, or the State met its burden to show one, because if there was a mistake of fact, the continued detention was permissible under *Lloyd*, and if there was no mistake of fact, Weber's actions were reasonable under the circumstances, which is all that is constitutionally required. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8.

investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant"). Likewise, approaching Brown and asking her for her information was reasonably related to the reasoning for the stop. Although Weber, assuming he observed the tag, could have chosen an alternative avenue for ascertaining the validity of the tag—under the circumstances those would have included requesting Brown to turn off her vehicle to dissipate the exhaust, wash off her window, or physically remove the tag from the interior of the car—we find his decision to swiftly approach Brown and request her information, under these circumstances, was reasonable, which is all that is constitutionally required. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8.

## IV. Conclusion

We affirm the denial of Brown's motion to suppress.

**AFFIRMED.**