# IN THE COURT OF APPEALS OF IOWA

No. 20-0254
Filed October 20, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JACK LEE CARSON, JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cass County, Jeffrey L. Larson, Judge.

Jack Carson Jr. appeals his criminal conviction. **AFFIRMED.**

William J. O'Brien, Omaha, Nebraska, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., and May and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Jack Carson Jr. appeals his conviction of possession of a controlled substance with intent to deliver. He argues (1) the court erred in denying his motion to suppress "because the purported alerts by the drug dog" on his vehicle "did not provide probable cause to search" and (2) his attorney was ineffective in failing to challenge the constitutionality of the traffic stop.

## I.    Background

This case focuses on the reliability of Odin, a narcotics detection dog. In the fall of 2018, following a program consisting of eighty hours of training, Odin was certified as a narcotics detection dog. Since then, he and his handler, Deputy Nathan Pigsley of the Shelby County Sheriff's Department, have participated in ongoing training a minimum of sixteen hours per month. Deputy Kyle Quist is a canine handler with the Cass County Sheriff's Department and is a master trainer. He was Odin's trainer culminating in Odin's certification and has been training police dogs in the neighborhood of twenty-five years. Quist explained the difference between a dog's alert and final response when searching as follows:

> An alert is the untrained response that the dog gives. That's the natural reactions that this dog gives when it locates odor that it is trained—that you have trained it to find.
> The final response is the trained response to that odor. So basically to break it down, the alerts are the changes that the dog goes through when it hits the odor—when it gets into the odor that it finds. The final response would be the sit or lay down or scratch or whatever it's trained to do when—after the alert basically.

He also explained a final response does not always follow an alert. This typically results from the dog smelling the odor it is searching for but not being able to connect it to a source. Pigsley testified to the same. Pigsley also explained Odin's

alerts include head snapping, heavy nasal sniffing, discontinued wagging of the tail, erecting his tail, body stiffening, sitting and staring with perked ears, and going up on his hind legs. Odin is a passive dog, meaning he would sit or lay down for his final response. According to Pigsley, Odin's success rate in locating narcotics is 95.83%.

On or about May 5, 2019, Carson was the subject of a traffic stop. Pigsley and Odin arrived on the scene. Pigsley deployed Odin on the vehicle, which had its windows open. Pigsley testified Odin exhibited the following alerts: "Head snap back, heavy nasal sniffing, ears perked forward, stopped search speed, more heavily nasal sniffing, ears perked up again, tail went erect, a short sit and then continued. Jumping up with heavy nasal sniffing." However, Odin did not make a complete final response, which, for Odin, is to sit and stare. However, video footage from the stopping officer's dashcam appears to show Odin sitting down very briefly. Pigsley testified the alerts indicated Odin detected an odor he was trained to detect, but a lack of a complete final response meant he could not locate the source. When the video was played at the suppression hearing, Pigsley testified as to the points Odin alerted as shown on the video.

Daniel Bowman, also a trainer of police dogs, testified on behalf of the defense. He has trained between 350 and 400 dogs over the last thirty-some years. As to alerts and responses, Bowman testified as follows:

> An alert is a physical reaction that a dog displays in response to a certain stimulus. In a scenting exercise, alerts are often given in three stages: A primary, a secondary and then what is known as a confirming response which is also called sometimes the indication.
> In narcotics detection, an example of a preliminary alert might be a head snap back and change in respiration. That's usually followed by some type of a secondary alert such as squaring the

body or beginning to bracket in an attempt to identify the exact source of the odor. The confirming response would be the dog's trained response. Basically a sit and stare.

Bowman agreed that all dogs do not alert in the same ways. Upon his review of the video of Odin's deployment, when asked whether he "observe[d] any behavior changes . . . that Odin provided that would justify a determination of probable cause in this incident," Bowman answered in the negative. He testified he also did not notice Odin exhibit any alerts. He explained, "[T]here's nothing in the dog's behavior that matched his behavior in the training records. So you would expect the dog to perform very, very close to the way he performs when he encounters the odor in training." In his report Bowman criticized the detail of Odin's training records. When Pigsley was asked whether he agreed with Bowman's assessment, he answered in the negative, explaining Bowman is unfamiliar with Odin's behavioral indicators and not all dogs are the same.

Carson was criminally charged as a result of items found in the ensuing search of his vehicle. In September, Carson filed a motion to suppress, in which he challenged the reliability of Odin, citing his alleged deficient training records and performance, Odin's unfamiliarity with the conditions of the stop, and the fact that Odin never demonstrated a final response. Quoting United States Supreme Court case law, he also noted the circumstances surrounding any particular alert may undermine the case for probable cause. Carson requested all evidence obtained as a result of the search be suppressed because the search was not supported by probable cause.

Following a suppression hearing, the district court denied the motion to suppress. The court found Odin's positive alerts on the vehicle were sufficient to

formulate probable cause to search the vehicle. Generally, the court found Pigsley and Odin were each properly trained and certified, Carson's complaints about their training and training documentation did not undermine that conclusion, and the alerts on the vehicle absent a final response were sufficient to establish probable cause.

The matter proceeded to a bench trial on the minutes of evidence, and the court found Carson guilty on count one and not guilty on count two. Carson appealed following the imposition of sentence.

## II.      Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *Id.* (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Coffman*, 914 N.W.2d at 244 (quoting *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012)). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

## III.      Analysis

### A.      Motion to Suppress

Carson argues the court wrongly denied his motion to suppress, asserting Odin's purported alerts did not establish probable cause. The State contests error preservation on this claim, claiming the motion to suppress did not raise this

specific argument. We assume without deciding Carson minimally preserved error and elect to reach the merits of his claims. *See 33 Carpenters Constr., Inc. v. State Farm Life & Cas. Co.*, 939 N.W.2d 69, 76 (Iowa 2020).

"The Fourth Amendment of the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

"A police officer has probable cause to conduct a search when the facts available to the officer would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (altered for readability). The test for probable cause is not an exact science. *See id.* "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Id.* at 243–44 (alterations in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). All that is "required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* at 244 (alteration in original) (quoting *Gates*, 462 U.S. at 231, 238). "In evaluating whether the State has met this practical and common-sensical standard, we . . . look[] to the totality of the circumstances." *Id.* There are no "rigid rules, bright-line

tests, [or] mechanical inquiries"—we follow "a more flexible, all-things-considered approach." *Id.*

A drug dog's reliability does not "depend on the State's satisfaction of multiple, independent evidentiary requirements." *Id.* at 245. "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide a sufficient reason to trust his alert," and "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* at 246–47. "The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Id.* at 247. That said, a defendant is entitled "to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* A defendant can do this by challenging the adequacy of the dog's certification or training and examining how the dog performed in those settings and in the field. *Id.* "And even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id.*

So the question before us "is whether all the facts surrounding [Odin's] alert[s], viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *See id.* at 248. Carson does not argue Odin's training was insufficient or that Odin is not generally reliable. We have Pigsley's testimony that Odin alerted

on the car, and Bowman's competing testimony that Odin did not alert. The video shows the following. Pigsley and Odin begin the sniff at the front of the driver side of the vehicle. They make a pass along that side of the vehicle to the rear and around the back of the vehicle. Odin exhibits some interest in the rear of the passenger side of the vehicle and slows his search, then the pair make a pass along the passenger side of the vehicle and around the front. While making these passes along the vehicle, Pigsley leads Odin by running his hand along the vehicle. On the pass along the passenger side of the vehicle, Odin jumps up onto the car twice. They begin a second pass along the driver side of the vehicle. When next to the front door, Odin snaps his head back and goes into a sitting position for a split second before continuing to follow Pigsley's hand along the car. He then jumps up on the trunk before proceeding around the back of the car, where he again exhibits interest in the rear of the passenger side of the car. They turn around for another pass along the driver's side to the front of the car and then make another full counterclockwise pass around the vehicle before discontinuing. Pigsley testified Odin was exhibiting heavy nasal breathing throughout the search, which Bowman was unable to dispute because the video had no audio.

Odin's ongoing training records show the following. On September 11, 2018, Odin trained on marijuana, methamphetamine, cocaine, and heroin in a building setting. His alerts included heavy nasal breathing, perking his ears, and head snapping, and he entered final response on each find. On September 12, Odin trained on methamphetamine, heroin, marijuana, and cocaine on vehicles and boxes. His alerts included head snapping, heavy nasal sniffing, and stiffening his tail, and he entered final response on each find. On September 15, Odin

trained on cocaine, methamphetamine, and ecstasy on vehicles and items. His alerts included head snapping and slowing his search speed, and he entered final response upon each find. On September 17, Odin trained on heroin, methamphetamine, cocaine, ecstasy, and marijuana on parcels, vehicles, and buildings. His alerts included head snapping, heavy nasal breathing, perked ears, slowing his search speed, and he went into final response on each find. On September 18, Odin trained on methamphetamine, cocaine, marijuana, and heroin in a garage setting. His alerts included head snaps and heavy nasal breathing, and he entered final response on all but one of four finds. On September 20, Odin trained on marijuana and cocaine. His alerts included slowing his search speed and heavy nasal sniffing. He went into final response on one find, only alerted on another, and missed the third. On September 26, Odin trained on marijuana, methamphetamine, heroin, and ecstasy, on vehicles and parcels. His alerts included head snapping and heavy sniffing, and he entered final response upon each find.

On October 2, Odin trained on cocaine, methamphetamine, heroin, ecstasy, and marijuana on a residence and a vehicle. His alerts included head snapping, slowing his search speed, and heavy sniffing, and he entered final response on each find. On October 21, Odin trained on methamphetamine, ecstasy, heroin, hashish, and cocaine in a building setting. His alerts included head snapping, standing on his hind legs, and heavy sniffing, and he entered final response on each find.

On November 13, Odin trained on methamphetamine, marijuana, and cocaine. As to methamphetamine, his alerts included changing his search speed,

standing on his back legs, and heavy breathing, but he did not enter final response. For marijuana and cocaine, his alerts included heavy sniffing, and he entered final response on each find. On December 5, Odin trained on marijuana, heroin, and cocaine in a building setting. His alerts included heavy sniffing and head snapping. He entered his final response on each find. On January 11, 2019 Odin trained on detection of marijuana, cocaine, and methamphetamine on vehicles. His alerts included heavy sniffing, snapping his head back and forth, and slowing his search speed. He entered his final response on each find.

On February 5, Odin trained on marijuana and methamphetamine on a building and vehicle. His only alert was heavy sniffing, and he entered his final response on each of his three finds. On February 14, Odin trained on methamphetamine, marijuana, and cocaine on trailer and vehicles. His alerts included heavy sniffing and head snapping. He entered final response on each find. On February 21, Odin trained on heroin, cocaine, marijuana, ecstasy, and methamphetamine in a building setting. His alerts included heavy sniffing, erect tail, perking of the ears, and head snapping. He was unable to find the heroin, he alerted on cocaine but did not enter final response, and he entered final response on marijuana and ecstasy.

On March 9, Odin trained on marijuana, methamphetamine, and heroin in a building and garage setting. His alerts included head snapping, heavy nasal breathing, and erecting his tail. He quickly entered final response on each find. On March 15, Odin participated in six exercises: one on marijuana; two on methamphetamine; and one each on ecstasy, cocaine, and heroin. His alerts included standing on his hind legs, stopping search speed, heavy sniffing, ear

perking, and erecting his tail. As to each separate exercise, he entered his final response. On March 21, Odin trained on cocaine, methamphetamine, marijuana, and heroin. His alerts included stopping or slowing search speed, perking his ears, heavy sniffing, going up on his hind legs, and large sweeping strokes of his tail. As to each separate exercise, he entered his final response. On April 11, Odin trained on methamphetamine, marijuana, heroin, and cocaine in vehicles. His alerts included heavy sniffing and perked ears, and he entered final response on each find. On April 25, Odin trained on methamphetamine, marijuana, cocaine, heroin, and ecstasy in vehicles. His alerts included head snapping, slowing his search speed, heavy sniffing, erecting his tail, and perking his ears. Of the five searches, he entered his final response on all but one occasion.

So we return to the video evidence, which shows Odin slowing his search speed on various occasions, jumping up on the car multiple times,[1] and snapping his head back before briefly entering his final response and continuing. We also have Pigsley's uncontested testimony that Odin engaged in heavy nasal sniffing. Contrary to Bowman's testimony, all of this behavior is consistent with the alerts Odin exhibited in training. While entering a final response in training was the norm, there were occasions where Odin only alerted. As Quist and Pigsley testified, a final response does not always follow an alert, which typically results from the dog smelling the odor it is searching for but not being able to connect it to a source.

---

[1] While Carson claims Pigsley cued Odin to jump up on the car, the video could be characterized that way on one occasion he jumped up, but not the others.

Based on the exhibition of several alerts common to this dog, we find this sniff was up to snuff. Odin's reliable alerts on the vehicle provided the officers with probable cause to search, so we affirm the denial of Carson's motion to suppress.

B.    Ineffective Assistance of Counsel

Carson argues his counsel was ineffective for failing to challenge the constitutionality of the traffic stop. Judgment and sentence were entered in early 2020, well after the amendment to Iowa Code section 814.7 stripped our authority to consider ineffective-assistance claims on direct appeal. *See State v. Damme*, 944 N.W.2d 98, 103 & n.1 (Iowa 2020).

## IV.    Conclusion

We affirm the denial of Carson's motion to suppress and his conviction.

**AFFIRMED.**