# IN THE SUPREME COURT OF IOWA

No. 17–0317

Filed October 12, 2018

**STATE OF IOWA,**

Appellee,

vs.

**CODY TYLER SMITH,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Clarke County, Monty W. Franklin, Judge.

A defendant convicted of operating while intoxicated seeks further review of a court of appeals decision affirming his conviction and the denial of his motion to suppress. **REVERSED AND REMANDED.**

Scott A. Michels of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas E. Bakke, Assistant Attorney General, and Michelle Rivera, County Attorney, for appellee.

**PER CURIAM.**

At 4:30 a.m., officers responded to a dispatch report of a vehicle in a roadside ditch. According to dispatch, a witness did not see any injuries, but saw the possible driver walking away. The officers did not find the driver, but they did see a van pass by on the road. The van briefly stopped in a nearby driveway, pulled out, and departed. The officers ran a check on the van's license plate and noticed it was registered to another member of the same household that the vehicle in the ditch had been registered to. One of the officers followed the van and pulled it over. It turned out that the driver of the car that had gone into the ditch was riding as a passenger in the van, and he was wearing only one boot. He was subsequently convicted of operating while intoxicated (OWI).

On appeal, we must decide whether the stop of the van was permissible under the community caretaking doctrine. Guided by our recent decision in *State v. Coffman*, 914 N.W.2d 240 (Iowa 2018), we conclude that it was not. Accordingly, we hold that the stop of van violated article I, section 8 of the Iowa Constitution. Therefore, we reverse the judgment of conviction and sentence and the denial of the motion to suppress, vacate the decision of the court of appeals, and remand this case for further proceedings.

## I. Facts and Procedural Background.

At approximately 4:30 a.m. on Saturday, April 2, 2016, sheriff's deputies were called to the scene of a single-vehicle accident in Clarke County. Dispatch informed Deputies Smith and Fitzpatrick that the vehicle was in a roadside ditch. Dispatch also relayed that a passerby had seen a possible driver walking away from the vehicle and had not seen any injuries.

After arriving at the scene, Deputy Fitzpatrick ran a check on the license plate of the vehicle in the ditch and determined it belonged to a Steven Smith with an Osceola address. Deputy Smith drove around in search of the individual who had been seen walking from the accident. Not finding anyone, he reparked his patrol car next to the vehicle in the ditch. On the front seat of that vehicle, he found a Minnesota driver's license belonging to the defendant, Cody Smith. There was no indication inside the vehicle that Cody had been injured.[1]

Meanwhile, a van drove by. It pulled into the driveway of a nearby residence, pulled back out of the driveway, and departed. Officer Smith ran a check on the van's license plate and determined it belonged to a Noreen Smith, who shared the same Osceola address as Steven.

Deputy Smith followed the van and pulled it over. When asked why he stopped the van, Deputy Smith testified,

> I was checking on the welfare of the people. I also found it suspicious that the vehicle driving by and the vehicle in the ditch had the same address when that address is approximately four miles southwest of where the vehicle in the ditch was at.

Deputy Smith further testified that he stopped the van because he "believed that the individual involved in the accident was either in the van, or those people were also looking for the individual who was in the accident."

Once Deputy Smith approached the van, he saw a passenger in the front seat—Cody—wearing only one boot. Steven was driving the van. Cody displayed signs of intoxication and his clothes were wet and muddy.

---

[1]The photographs of the vehicle stuck in the ditch that are in the record also seem to dispel the notion that this would have been an injury-accident.

Because of the surplus of Smiths involved in this case, we shall refer to the defendant and other members of the defendant's family by their first names.

Cody admitted having been the driver of the vehicle that went into the ditch. After failing various field tests and a preliminary breath test, Cody was arrested and transported to the county jail, where he registered a .184 blood alcohol level on a chemical test.

On May 12, Cody was charged by trial information in the Iowa District Court for Clarke County with OWI, first offense, in violation of Iowa Code section 321J.2, a serious misdemeanor. *See* Iowa Code § 321J.2(1), (2)(*a*) (2016).

Cody filed a motion to suppress the evidence resulting from the stop of the van, claiming the stop violated the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. After a September 2 hearing on the matter, the district court denied Cody's motion to suppress. In its September 9 ruling, the court concluded that the stop had been justified as a community caretaking function.

> At the time of the stop, Officer Smith was investigating a wrecked vehicle found in a ditch without a driver present. At the time, the status of the driver was in question as the location and condition of the driver was unknown. It was early in the morning (4:30 a.m.) and still dark[,] making it potentially dangerous to walk on the road after being involved in an accident. There was little if any traffic at the location so the driver's opportunity to be helped by passing vehicles was limited. The driver had also left his driver's license on the seat of the wrecked vehicle with the vehicle unlocked[,] calling into question his judgmental abilities following the accident. It was therefore appropriate for a reasonable police officer to have concerns about the condition of the driver of this vehicle and to continue with efforts to locate the driver to ensure that the driver was not injured or in need of assistance.
>
> These legitimate concerns outweighed the limited intrusion upon the occupants of the van which took place when Officer Smith stopped the van. Officer Smith knew that the van was registered to a person with the same last name as the driver of the vehicle in the ditch and that the address of the registered owner of the van was the same address as the address of the registered owner of the vehicle in the ditch. It was reasonable to assume that the occupant(s) of the van were related to the driver of the vehicle in the ditch and either had

information as to the status of the driver or were in fact also trying to locate the driver. Stopping the van was the only realistic method for Officer Smith to continue his efforts to ensure that the driver of the vehicle in the ditch was not injured or in need of assistance.

Following a December 9 bench trial on the minutes, Cody was found guilty of OWI, first offense, in violation of Iowa Code section 321J.2. The district court sentenced Cody to two days in jail and ordered him to pay fines and surcharges.

Cody appealed, still contending that the stop of the van violated the Fourth Amendment and article I, section 8. We transferred the case to the court of appeals, which affirmed Cody's conviction, concluding that "the traffic stop at issue was constitutionally reasonable as a permissible and appropriate exercise of the community caretaking function."

We granted Cody's application for further review.

## II. Standard of Review.

Cody contends that the seizure violated his rights under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. "When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *Coffman*, 914 N.W.2d at 244 (quoting *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017)). We view the entire record and "make 'an independent evaluation of the totality of the circumstances.' " *Id.* (quoting *Storm*, 898 N.W.2d at 144). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016) (quoting *State v. Lindsey*, 881 N.W.2d 411, 415 (Iowa 2016)); *see also Coffman*, 914 N.W.2d at 244. We must view each community caretaking case in light of the specific circumstances. *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012).

**III. Analysis.**

This case requires us to apply the community caretaking exception to the warrant requirement. We recently analyzed that exception in *Coffman.* There, we reiterated that there is a three-step inquiry to determine whether an officer's actions fall under the community caretaking exception:

> (1) was there a seizure within the meaning of the Fourth Amendment?; (2) if so, was the police conduct bona fide community caretaker activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the privacy of the citizen?

*Coffman*, 914 N.W.2d at 245 (quoting *State v. Crawford*, 659 N.W.2d 537, 543 (Iowa 2003)). However, we emphasized that in the second step under article I, section 8 of the Iowa Constitution, "it is incumbent on the state to prove *both* that the objective facts satisfy the standards for community caretaking *and* that the officer subjectively intended to engage in community caretaking." *Id.* at 257. In this instance, the State does not dispute that there was a seizure. The other two questions are in dispute.

In *Coffman*, we upheld an officer's decision to pull his patrol car behind a parked, occupied car on the side of a rural highway in the middle of the night and activate his emergency flashers. We essentially agreed with the district court's conclusion that

> [a] car parked on the shoulder of a highway at 1:00 a.m. in a rural area in Iowa should raise a number of concerns. There is a safety issue in having a vehicle parked within two feet of the traveled portion of a highway, especially at 1:00 a.m., in an area that is not lighted. Second, the occupant(s) of the vehicle might have car problems or medical issues that they are experiencing. Most people would not simply pull over to the side of the road in this type of setting at such an hour. It would have been irresponsible for Deputy Hochberger to simply drive by without checking on the vehicle.

*Id.* at 243, 253–54.

This case is different—different enough that we hold the community caretaking exception does not apply under article I, section 8. The van clearly did not need assistance. The possibility exists that the driver of the vehicle in the ditch needed assistance and that the van was looking for the driver, but this is seemingly belied by the fact that the van left the scene, presumably after noticing the presence of a law enforcement vehicle.

Deputy Smith did testify that he was "checking on the welfare of the people involved," given the possibility that the van either was looking for the driver of the vehicle in the ditch or had already picked him up. Yet the van appeared not to want Deputy Smith's help, and from everything the deputies had heard and seen, there was no indication of an injury or other emergency. By analogy, this is like a *Coffman* case in which Coffman decided to pull away and leave after seeing the officer and before the officer activated his flashers. If those had been the facts in *Coffman*, we would not have found that the community caretaking doctrine applied, and we do not find that it applies here.

Examining the second factor noted above under our de novo standard of review, we do not find that this was bona fide community caretaking activity. As noted above, we are deciding this case under article I, section 8 of the Iowa Constitution. Again, this means that the stop must meet both objective and subjective standards. *Id.* at 257–58.

A vehicle that veers into a roadside ditch at 4:30 a.m. on a weekend is often the result of impaired driving. Given all the facts and circumstances we have recited, we conclude that the van stop was investigatory in nature. The van stop would have comprised an effort to locate Cody, not to potentially help him, but to investigate how he drove the car into the ditch.

Turning to the third prong, we found in *Coffman* that the intrusion into the privacy of the citizen was not great because the vehicle was already parked. We noted, "The vehicle was already at rest when Deputy Hochberger activated the flashers . . . ." *Id.* at 253. Here by contrast, Deputy Smith stopped a moving vehicle. Other options existed. For example, Deputy Smith testified that the Osceola address where both vehicles were registered was only four miles away. Deputy Smith could have gone to that residence and asked to speak with the residents.

Another way to look at this case is to do a thought experiment. Suppose Cody had not been found in the van, but the stop of the van had revealed that Steven was doing something wrong. Would Steven's motion to suppress be sustained? We think so.

## IV. Conclusion.

For the reasons stated above, we vacate the decision of the court of appeals, reverse Cody Smith's conviction and sentence, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

This opinion shall be published.