# IN THE COURT OF APPEALS OF IOWA

No. 20-1142
Filed June 16, 2021

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**JEFFERY LYNN BRITCHER,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott,

Judge.


       Jeffery Britcher appeals his criminal conviction, challenging the denial of his

motion to suppress evidence. **AFFIRMED.**


       Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant

Appellate Defender, for appellant.

       Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


       Considered by Doyle, P.J. and Mullins and May, JJ.

**MULLINS, Judge.**

Jeffery Britcher appeals his conviction of possession of methamphetamine with intent to deliver as a habitual offender, challenging the denial of his motion to suppress evidence obtained as a result of an allegedly unconstitutional traffic stop and ensuing search of a vehicle. He argues (1) the traffic stop was impermissibly expanded in duration, (2) the stop was impermissibly expanded in scope, and (3) a dog sniff of the vehicle was unconstitutional because the dog entered the vehicle.

## I.     Background

At approximately 1:42 a.m. on January 24, 2020, Sergeant Dane Wagner of the Sioux City Police Department drove past a specific residence he knew to be associated with drug activity.[1] Wagner observed a black Ford Explorer parked in the street directly in front of the residence. He noticed the front license plate was "bent in half" to an extent it could not be read. Wagner explained this is "a tactic that's commonly used [by] people that . . . don't want us to read their license plate," and he has come into contact with multiple stolen vehicles that use this tactic. Wagner passed the vehicle and obtained the vehicle's rear plate number. He ran the license plate but, due to technical difficulties, he was unable to learn to whom the vehicle was registered.

Wagner continued to patrol the area. At roughly 1:57 a.m., Wagner again came into contact with the Explorer, which was then in transit. He observed the rear plate lamps of the vehicle were missing their cover, which caused the lamps to shine straight backward as opposed to down onto the license plate. Wagner

---

[1] Wagner intentionally drives by the residence frequently to track any potential drug activity.

initiated a traffic stop[2] based on improper illumination of the rear plate as well as improper display of the front plate.

Wagner approached the vehicle and advised of the reason for the stop. Britcher advised he just retrieved the vehicle from a ditch the same day and he was in town visiting family. Wagner requested Britcher's driver's license, registration, and proof of insurance. Britcher provided a "digital" copy of his insurance on his phone and a driver's license, but he could not provide a vehicle registration. Wagner questioned if Britcher had any weapons in the vehicle, and Britcher responded he had a pocket knife. Wagner asked if any illegal items were in the vehicle, and Britcher responded in the negative. Wagner verified Britcher's current address, in Mason City, and asked him how long he lived there. Britcher advised he just got out of prison in August and had only lived there about five months. Wagner questioned why Britcher was in prison, and Britcher responded methamphetamine possession. Wagner testified this raised his suspicions because drug activity would be consistent with Britcher's presence at the residence where he previously observed the vehicle parked. This was followed by some discussion about Britcher's nearby family, after which Wagner returned to his police cruiser.

When he returned to his cruiser, roughly four minutes into the stop, Wagner began running Britcher's information and checked Britcher's criminal history, pursuant to which he discovered Britcher "had a significant history involving methamphetamine." Within a minute, it appears from Wagner's body microphone

---

[2] A video of the traffic stop from the dash-cam in Wagner's cruiser was admitted as evidence at the suppression hearing.

another officer arrived on the scene, who Wagner advised Britcher was from Mason City and was in town visiting family. Wagner explained the reasons for the stop and noted he ran the license plate earlier but his computer was being difficult with him. The other officer advised, "They're coming back slow." Wagner agreed. Wagner went on to advise of Britcher's recent prison stint for methamphetamine possession. Wagner then stated, "If I'm gonna call for a dog I better do it quick, because" he was sure another officer would be requesting one soon and there were "not enough men to go around." Wagner explained to the other officer, "For not being from here, he's gotta couple contacts with us huh?" Roughly two and one-half minutes after returning to his cruiser, apparently while still waiting for receipt of information checks from his computer system, Wagner requested a mobile K9 unit. Wagner specifically testified calling a drug dog caused no delay in his generation of the written warnings.

Wagner explained that, while in his cruiser, he had to run the vehicle registration because Britcher could not provide a registration and his computer was "slow to come back" when he ran it earlier when the vehicle was parked at the residence. As soon as the computer cooperated and Wagner had all the necessary information, he began generating the warning citations. Wagner opined that issuing one warning when he is provided all the requested documentation usually takes about five minutes, but when he is not provided a registration or license and either has to type it in or pull it electronically from somewhere else it takes longer. He testified the vehicle registration, which Britcher did not provide, contains a bar code that can be scanned into the system. Absent the registration, Wagner would be required to manually enter the registration from another

database, a "very difficult, very tedious" process, or he would need to enter a separate database and have the information transferred over to the citation software, which takes longer.

Roughly five minutes after Wagner called for a K9, the audio from the dash-cam video indicates Wagner was having issues with his computer's printing system. Wagner testified that, when the K9 unit arrived, he had completed one warning citation but was still in the process of completing the second.

Roughly twelve minutes into the traffic stop, Officer Mike Simons and his dog arrived on the scene, Wagner advised him of the situation, and the two discussed another potentially related traffic stop. About a minute later, Simons and another assisting officer had Britcher exit his vehicle. About one and one-half minutes later, Simons had his dog conduct an open-air sniff of the vehicle, and the dog alerted on the vehicle for the presence of narcotics. Wagner testified he still had not completed both warnings by the time the dog alerted on the vehicle. Thereafter, Simons allowed the dog to enter the vehicle and conduct a more comprehensive, but brief, search. Shortly thereafter, just short of seventeen minutes into the stop and thirteen minutes after Wagner returned to his cruiser to generate warnings, Wagner exited his cruiser and issued Britcher the warnings, during which Simons began searching the vehicle. Britcher advised Wagner he did not consent to a search of the vehicle. Wagner responded, "No, I understand that. He's got probable because the dog indicated on the vehicle, yeah he's got probable cause." Britcher referenced *Rodriguez v. United States*,[3] and retorted he

---

[3] *See generally* 575 U.S. 348 (2015).

did not have to wait around for a drug dog. Wagner explained the factors that led him to summon a drug dog. Wagner proceeded to issue the warnings and then assisted in the search of the vehicle.

As a result of the search, Britcher was charged by trial information with possession of methamphetamine with intent to deliver and third-offense possession of methamphetamine, both as a habitual offender. Britcher filed a pre-trial motion to suppress, arguing "the extension of the traffic stop, the detention of the defendant and the search of the vehicle were all done in violation of the" state and federal constitutions. Specifically, Britcher argued the officer extended the stop beyond its initial purpose to summon a drug dog, without the required reasonable suspicion of criminal activity to extend the encounter.

Following a hearing, the court denied Britcher's motion to suppress. The court found the summoning of the drug dog did not prolong the stop beyond completing its purpose, issuing warnings. The court highlighted the facts that the open-air sniff and the dog's alert on the vehicle were completed by the time the warnings were completed and there was no indication in the record that Wagner stalled or otherwise delayed the generation of warnings to effectuate the dog's investigation.

The matter proceeded to a bench trial on the stipulated minutes of evidence, and the court found Britcher guilty of possession of methamphetamine with intent to deliver as a habitual offender.[4] Britcher appealed following the imposition of sentence.

---

[4] The court found count two merged into count one. Britcher previously stipulated to being a habitual offender.

## II. Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Fogg*, 936 N.W.2d at 667 (quoting *Coffman*, 914 N.W.2d at 244). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

## III. Analysis

### A. Error Preservation

Britcher argues the court erred in denying his motion to suppress because the traffic stop was unconstitutional on the following bases: (1) the traffic stop was impermissibly expanded in duration to allow the dog sniff, (2) the stop was impermissibly expanded in scope, and (3) the dog sniff of the vehicle was unconstitutional because the dog entered the vehicle. The State contests error preservation on points two and three, noting only the duration of the stop was raised and ruled upon.

As to the scope of the stop, Britcher asks us to adopt a scope-based test of constitutional reasonableness under the Iowa Constitution, as opposed to a duration-based, non-scope-based test that is in line with reasonableness under the

federal constitution. We agree with the State this issue was neither raised nor decided below, as the motion to suppress was wholly based on the duration-based test, and error was therefore not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

As to the dog entering the vehicle, Britcher argues in his reply brief his "motion to suppress specifically called the district court's attention to the fact that the dog entered the vehicle, and the court necessarily concluded the dogs entry of Britcher's vehicle was permissible even in the absence of probable cause." But the motion to suppress only noted the dog "was allowed inside his car to search" by way of factual backdrop. No legal argument was raised on the issue. *See id.* The issue had nothing to do with the conclusory prayer of the motion, that all evidence be suppressed "as a result of the illegal extension of the stop and seizure." The court certainly did not rule on, or even acknowledge, the issue of whether the dog entering the vehicle warranted suppression of any evidence. *See Stammeyer v. Div. of Narcotics Enforcement*, 721 N.W.2d 541, 548 (Iowa 2006) (finding an argument not preserved for appeal when there was "nothing indicating the court ruled upon or even considered [it]"). If the issue was so germane and blatant—as argued by Britcher—but the court overlooked it, the proper procedure to preserve error was to file a motion raising the court's alleged error prior to appealing. *See Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012). In any event, the basis for the motion to suppress was the dog entering the vehicle occurred after the alleged impermissible prolongation of the stop. However, our

review of the evidence and testimony discloses the dog alerted on the vehicle before Simon allowed it to enter.

We proceed to the merits of the preserved argument.

B.      Merits

1.      *Legal Principles*

"The Fourth Amendment [to] the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

"[A] dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." *Rodriguez*, 575 U.S. at 350 (discussing *Illinois v. Caballes*, 543 U.S. 405 (2005)). However, a "stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350–51 (alterations in original) (quoting *Caballes*, 543 U.S. at 407); *accord In re Prop. Seized from Pardee*, 872 N.W.2d 384, 392 (Iowa 2015) (citation omitted). "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at]

purpose.'" *Rodriguez*, 575 U.S. at 354 (alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)); *Pardee*, 872 N.W.2d at 392 (citation omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 N.W.2d at 354. "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop" but "he [or she] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355; *Pardee*, 872 N.W.2d at 393; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); *State v. Coleman*, 890 N.W.2d 284, 285 (Iowa 2017) ("[T]he stop must end when reasonable suspicion is no longer present.").

"Beyond determining whether to issue a traffic ticket, an officer's mission" may include typical inquires incident to the stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 349 (citations omitted). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* (citations omitted); *accord Pardee*, 872 N.W.2d at 393. "A dog sniff, by contrast, is a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing.'" *Rodriguez*, 575 U.S. at 355 (alteration in original) (quoting *Indianapolis v. Edmond*, 531 U.S. 32 (2000)). As such, a dog sniff "can only be

undertaken without individualized suspicion if it does not prolong the traffic stop." *Pardee*, 872 N.W.2d at 393. "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'" *Rodriguez*, 135 S. Ct. at 1616 (alteration in original) (quoting *Caballes*, 543 U.S. at 407); *accord Pardee*, 872 N.W.2d at 393.

"The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'— *i.e.*, adds time to—'the stop.'" *Rodriguez*, 575 U.S. at 357; *accord Pardee*, 872 N.W.2d at 393. Notably, a police officer violates the Fourth Amendment when he or she has developed "reasonable suspicion of other criminal activity—if at all— only by prolonging the initial stop beyond the time reasonably necessary to execute the traffic" stop. *Pardee*, 872 N.W.2d at 391; *accord State v. Bounmy*, No. 15-2225, 2017 WL 512486, at *5 (Iowa Ct. App. Feb. 8, 2017) ("Applying *Rodriguez*, our supreme court found a roadside dog sniff is impermissible when the state trooper 'developed reasonable suspicion of other criminal activity—if at all—only by prolonging the initial stop beyond the time reasonably necessary to execute the traffic violation warnings.'" (quoting *Pardee*, 872 N.W.2d at 391)); *State v. Carroll*, No. 15-0970, 2016 WL 3274500, at *3 (Iowa Ct. App. June 15, 2016) (finding an officer impermissibly prolonged a stop where he "'developed reasonable suspicion of other criminal activity—if at all—only by prolonging the initial stop beyond the time reasonably necessary to execute the traffic violation warnings.'" (quoting *Pardee*, 872 N.W.2d at 391)). If the duration of the stop is impermissibly extended, the question is whether an individualized suspicion to extend the seizure would have existed without the undue delay. *See Rodriguez*, 575 U.S. at 358 (remanding

for consideration of whether reasonable suspicion supported detaining the motorist beyond the time required to complete the traffic stop); *Pardee*, 872 N.W.2d at 396; *Campbell*, 2017 WL 706208, at *4; *Bounmy*, 2017 WL 512486, at *6; *Carroll*, 2016 WL 3274500, at *3.

### 2.    Discussion

Britcher argues "Wagner extended the duration of the traffic stop by unnecessarily reviewing and discussing Britcher's criminal history, and by calling for a drug dog."

Officers are allowed to conduct a reasonable investigation of a traffic infraction, which "includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." *State v. Salcedo*, 935 N.W.2d 572, 578 (Iowa 2019). "[A]n officer may detain the occupants of a vehicle during a traffic stop 'while the officer completes a number of routine but somewhat time consuming tasks related to the traffic violation.'" *Id.* at 580 (citation omitted). This includes "running a computerized check of the vehicle's registration and insurance; running a similar check of the occupants' identification documents *and criminal histories*; preparing the traffic citation or warning; and asking the occupants about their destination, route, and purpose." *Id.* (emphasis added) (altered for readability). "The reasonable investigation, however, may be expanded to satisfy suspicions of criminal activity unrelated to the traffic infraction based upon responses to reasonable inquiries." *Id.* Such an expansion, though, requires the officer to identify "specific and articulable facts which, taken together with rational inferences

from those facts" that amount to reasonable suspicion justifying further investigation. *Id.* (citation omitted).

Here the purpose of the traffic stop was to issue warnings. The evidence discloses that when Wagner returned to his cruiser, he had to request information concerning the vehicle's registration because Britcher could not tender his registration paperwork. Due to issues with the computer system, a return of information took longer than usual. During that time frame, Wagner also reviewed Britcher's criminal history—which was permissible even if he was not waiting for a return of information, *see id.*—and discovered Britcher "had a significant history involving methamphetamine." While continuing to wait for a return of information on the vehicle's registration, Wagner discussed the situation with another officer who arrived on scene, and Wagner also decided to call for a drug dog. The evidence shows Wagner checked Britcher's criminal history and called for a drug dog while waiting for verification of Britcher's registration information. Retrieving said information would be essential to issuing an equipment warning. The record also discloses Wagner began generating the warnings as soon as he had all the required information before him. So reviewing Britcher's criminal history and calling in a drug dog did not prolong the stop. Furthermore, the dog sniff was completed with a positive alert prior to the conclusion of the less than thirteen minutes[5] Wagner was in his vehicle effectuating the purpose of the stop.

---

[5] As noted, Wagner opined it would usually take around five minutes to prepare a warning but it would take longer where, as here, he was not tendered a vehicle registration.

Because Wagner's acts about which Britcher complains—checking and discussing Britcher's criminal history and calling in a drug dog—as well as the dog sniff itself, did not exceed the time needed to handle the matter for which the stop was made—issuing warnings—the stop was not prolonged beyond the time reasonably required to complete the mission of issuing the warnings. Checking and discussing the criminal history and summoning a dog did not prolong the stop because the record discloses Wagner was still waiting for a computer return of registration information when those acts occurred, and he began generating the warnings as soon as he was able. As such, authority for the seizure did not end, and Britcher's constitutional rights were not violated.

## IV. Conclusion

Finding no cause for reversal on the issues properly presented for our review, we affirm the denial of Britcher's motion to suppress, and his conviction.

**AFFIRMED.**