# IN THE SUPREME COURT OF IOWA

No. 22–1531

Submitted October 11, 2023—Filed February 9, 2024

**STATE OF IOWA,**

    Appellant,

vs.

**MORGAN MARIE MCMICKLE,**

    Appellee.

---

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, Judge.

Discretionary review of a district court order granting a defendant's motion to suppress evidence of a chemical breath test and statements made during the course of an OWI investigation. **REVERSED AND REMANDED.**

McDonald, J., delivered the opinion of the court in which all justices joined. McDermott, J. filed a concurring opinion.

Brenna Bird, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellant.

Matthew T. Lindholm of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellee.

**MCDONALD, Justice.**

This appeal presents two questions. First, may a peace officer investigating a suspected offense of operating a motor vehicle while intoxicated use a search warrant to obtain from a driver a blood sample for chemical testing rather than invoking the statutory implied consent procedure set forth in Iowa Code chapter 321J (2022)? The district court answered this question in the negative and granted the defendant's motion to suppress the result of a chemical test performed on her blood. Second, when a peace officer fails to honor an arrestee's request to speak with counsel pursuant to Iowa Code section 804.20, does the statutory violation require the suppression of evidence unrelated to the statutory violation? The district court answered this question in the affirmative and granted the defendant's motion to suppress the chemical test performed on her blood as well as the defendant's statements made to law enforcement officers during the investigation. We granted the State's application for discretionary review.

On the night of February 11, 2022, Morgan McMickle was driving her vehicle in Boone County. She rear-ended a stopped vehicle, left the scene, and continued driving. The driver of the other vehicle followed McMickle, and a passenger in that vehicle called 911 for assistance. After some period of time, McMickle pulled over to the side of the road. The trailing vehicle did the same. Boone County Deputy Sheriff Nathan Benjamin came upon the vehicles parked on the roadside.

Deputy Benjamin approached the driver's side window of McMickle's vehicle and asked McMickle for her license, registration, and proof of insurance. The bodycam video showed McMickle was in a stupor and was slow to respond. She opened her glove box, pulled out a pile of documents, and handed them to Deputy Benjamin. Deputy Benjamin informed McMickle that he believed she was

driving while impaired. Deputy Benjamin suspected McMickle was impaired based on the collision, the smell of an alcoholic beverage emanating from the vehicle, McMickle's slurred speech, and McMickle's difficulty in providing the requested documentation. While Deputy Benjamin was standing outside the vehicle, McMickle tried to call her lawyer using her cell phone. Deputy Benjamin informed her that she would not be able to do that right now and asked her to get out of the vehicle. When McMickle did not comply, Deputy Benjamin opened the driver's side door and instructed McMickle to exit the vehicle. She did so. By this time, another deputy had arrived at the scene. The second deputy took McMickle's cell phone from her hands. Deputy Benjamin instructed McMickle to walk to the rear of the vehicle, and she complied. Deputy Benjamin began to explain field sobriety testing to McMickle. While Deputy Benjamin was explaining field sobriety testing to McMickle, she asked five different times to call her lawyer. When it became apparent that McMickle was not going to cooperate, Deputy Benjamin instructed McMickle to turn around and put her hands behind her back. She did so. Deputy Benjamin handcuffed her, placed her in the front seat of his vehicle, and transported her to the law enforcement center for further investigation.

At the law enforcement center, McMickle asked to speak to her lawyer. Deputy Benjamin told her that she "need[ed] to comply with what's going on here, we're in a correctional institute, you need to do what they ask you to do." McMickle responded, "When do I get to talk to my lawyer?" Deputy Benjamin replied, "When my investigation is complete." Iowa Code section 804.20 provides, among other things, that any peace officer having custody of an arrested person "shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both." The parties do not dispute that McMickle was

never advised of her rights under Iowa Code section 804.20 and was never afforded the opportunity to call her lawyer despite her repeated requests.

To complete his investigation, Deputy Benjamin applied for and obtained a search warrant authorizing the collection and testing of a blood specimen. After obtaining the search warrant, Deputy Benjamin transported McMickle to a local hospital for a blood draw. Chemical testing of the blood specimen showed McMickle had blood alcohol content of .274, more than three times the legal limit. Deputy Benjamin testified that he had been instructed by the local county attorney to apply for a search warrant rather than invoke the statutory implied consent procedure set forth in chapter 321J when a suspect will not participate in field sobriety testing. Deputy Benjamin was also of the understanding that he should apply for a search warrant when there had been a motor vehicle accident involving the suspect or when the suspect had left the scene of a motor vehicle accident.

McMickle was charged with operating a motor vehicle while intoxicated (OWI), first offense, in violation of Iowa Code section 321J.2(2)(*a*). She filed a motion to suppress evidence. She first argued that Deputy Benjamin's use of a search warrant to obtain and test a blood sample was illegal. Specifically, McMickle argued that the deputy was required to invoke the statutory implied consent procedure set forth in Iowa Code chapter 321J and afford McMickle the opportunity to refuse to provide a bodily specimen. McMickle also argued that Iowa Code chapter 808, governing the issuance of search warrants, does not authorize search warrants for the collection of bodily specimens. McMickle further argued that use of a search warrant to collect evidence in lieu of the statutory implied consent procedure violated her federal and state constitutional rights to equal protection of the laws and due process of law. Finally, McMickle

argued that the deputy violated her statutory right under Iowa Code section 804.20 to call and consult with her lawyer.

The district court granted McMickle's motion on all four grounds. The district court held Deputy Benjamin was not authorized to obtain a search warrant to collect and test McMickle's blood. The district court reasoned that the statutory implied consent procedure was the exclusive means by which a law enforcement officer can investigate suspected OWI offenses. The district court also held that Deputy Benjamin had no statutory authority to obtain a search warrant to collect and test bodily specimens. The district court reasoned that chapter 808 does not provide any authority for the collection of bodily specimens. The district court also held that Deputy Benjamin's decision to apply for and execute a search warrant violated McMickle's right to equal protection of the laws and McMickle's right to due process of law under the United States and Iowa Constitutions. Finally, the district court held that Deputy Benjamin's refusal of McMickle's repeated requests to speak to her lawyer violated her rights under section 804.20. The district court ordered the following evidence suppressed: "any verbal or non-verbal assertion" McMickle made "upon being handcuffed;" "any statements and non-verbal assertions of an incriminating nature" "made at the Boone County [law enforcement center];" and "the search warrant documents, blood testing procedures[,] and blood test results."

We first address the district court's ruling regarding the legality of Deputy Benjamin's decision to obtain a search warrant for the collection and testing of McMickle's blood. In *State v. Laub,* filed today, we held that chapter 321J is not the exclusive means by which an officer can investigate suspected OWI offenses. ___ N.W.3d ___, ___ (Iowa 2023). We also held that chapter 808 of the Iowa Code authorizes law enforcement officers to apply for, obtain, and execute search warrants for bodily specimens and nothing in

chapter 321J precludes an officer from using the search warrant authority granted in chapter 808 to investigate suspected OWI offenses. *Id.* at ___. We further held that a law enforcement officer's decision to obtain and execute a search warrant to investigate suspected OWI offenses does not violate a suspect's federal or state constitutional rights to equal protection of the laws or due process of law. *Id.* at ___. Those holdings apply to this case. We reverse the district court's suppression ruling on these issues.

We next address the district court's ruling regarding Iowa Code section 804.20. The State concedes for the purposes of this interlocutory appeal that section 804.20 was violated, but it contests the scope of the district court's suppression order. The district court held that the State's violation of section 804.20 required the suppression of "any statements and non-verbal assertions of an incriminating nature [McMickle] made at the Boone County [law enforcement center]" as well as "the blood test results." The State concedes that McMickle's incriminating statements should be suppressed, *see State v. Hicks*, 791 N.W.2d 89, 97 (Iowa 2010) ("The remedy associated with a section 804.20 violation is the exclusion of evidence . . . ."), but it argues that suppression of the blood test results was an improper application of the exclusionary rule.

The "exclusionary rule requires the suppression of evidence discovered as a result of illegal government activity." *State v. Watts*, 801 N.W.2d 845, 853 (Iowa 2011) (quoting *State v. McGrane*, 733 N.W.2d 671, 680 (Iowa 2007)). The exclusionary rule also requires the suppression of additional evidence tainted by the original illegality. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). Such tainted evidence is colloquially referred to as the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341 (1939). There are generally recognized exceptions to the exclusionary rule. "One exception permits use of certain evidence when circumstances independent of the initial illegality

have so attenuated the causal connection as to purge the taint of the unlawful police action." *State v. Naujoks*, 637 N.W.2d 101, 111 (Iowa 2001). A second exception allows the admission of unlawfully obtained evidence where "the discovery of the evidence by lawful means was inevitable." *Id.* A third exception provides that "[e]vidence may also be admitted if the discovery of the evidence can be traced to a source independent of the originally illegally obtained fruits." *Id.* The three identified exceptions are specific instantiations of a more general principle: the exclusionary rule should not be used to suppress evidence where there is no causal connection between the government's illegal activity and the challenged evidence. To apply the exclusionary rule in the absence of a causal connection between the government's illegal activity and the challenged evidence "would 'put the police in a worse position than they would have been in absent any error or violation.'" *Id.* at 112 (quoting *State v. Seager*, 571 N.W.2d 204, 211 (Iowa 1997)).

The district court erred in holding the blood test results should be suppressed due to a violation of section 804.20. The blood test results can be traced to a source independent of any violation of section 804.20. *See id.* at 111. Specifically, the test results were obtained pursuant to a lawfully issued search warrant. The search warrant application was based on Deputy Benjamin's knowledge that McMickle rear-ended a vehicle and left the scene. The search warrant application was also based on his observations of McMickle during their initial encounter on the roadside. He observed she had bloodshot and watery eyes. Her speech was slurred and mumbled. She smelled of an alcoholic beverage. She had an unsteady gait. The search warrant application rested on these observations only. It did not contain any statements from McMickle obtained in violation of section 804.20. The blood specimen and chemical test of the same were thus wholly independent of any violation of section 804.20 and

should not have been suppressed. *See Murray v. United States*, 487 U.S. 533, 537–38, 542 (1988) (stating "[t]he ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the . . . evidence at issue" and so suppression is not required for "evidence acquired in a fashion untainted by the illegal evidence-gathering activity"); *Naujoks*, 637 N.W.2d at 111–12; *Seager*, 571 N.W.2d at 214 (holding "the exclusionary rule does not apply and the district court erred in sustaining the defendant's motion to suppress" where evidence was obtained pursuant to a search warrant untainted by illegal activity).

**REVERSED AND REMANDED.**

All justices concur. McDermott, J., files a concurring opinion.

**MᴄDᴇʀᴍᴏᴛᴛ, Justice (concurring).**

I join the majority opinion but write separately to address the violation of McMickle's rights under Iowa Code § 804.20 (2022). The State concedes that McMickle was denied her right to communicate with a lawyer or family member after arriving at the law enforcement center. McMickle argues that the results of the blood test she was later ordered to provide should thus be suppressed. The court, in my view, correctly concludes that suppression is unjustified in this case because the evidence used to get the search warrant for her blood was acquired within the first minutes of the encounter—before McMickle had any right to make a call—and was thus severed from the violation of her § 804.20 rights.

But this is not to put a stamp of approval on the § 804.20 violation. The statute provides that an officer, having "arrested or restrained . . . [a] person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both." *Id.* The right belongs not merely to drunk driving suspects but to any person restrained for any reason. *Id.*; *State v. Moorehead*, 699 N.W.2d 667, 674 (Iowa 2005). Notably, the right extends beyond one's constitutional right to speak to a lawyer; it requires that police also allow the arrestee to speak or meet with a *family member*. Iowa Code § 804.20. The inclusion of family members makes it clear that the right is intended to provide a detained suspect with more than legal advice alone. It might also provide, for example, a way to inform an arrestee's family about the arrestee's whereabouts and circumstances, or to afford the arrestee some measure of familial support after arriving at the place of detention.

Our cases have held that a violation of § 804.20 may justify suppression of evidence. *See Moorehead*, 699 N.W.2d at 674–75. The statute itself, though,

says nothing about suppression. Iowa Code § 804.20. The legislature specifies a different remedy in the statute for violating an arrestee's right to call or meet with a lawyer or family member. *Id.* It provides that "[a] violation of this section shall constitute a simple misdemeanor." *Id.*

So while we reverse the suppression order despite the separate § 804.20 violation, one would be mistaken to read into it an endorsement of police action that bulldozes a detained person's right to contact family and counsel without unnecessary delay. The statutory remedy imposing criminal liability exists notwithstanding a court's refusal to suppress evidence when an officer violates § 804.20. Simply because an officer validly obtains evidence against a suspect through other means does not grant the officer immunity from criminal prosecution for infringing this right.